C. Dale HANEY, Appellant,

v.

The CITY COURT In and For the CITY OF EMPIRE, Fred Rodgers, Judge of the City Court in and for the City of Empire, and Sue P. Kenney, Court Administrator, Appellees.

No. 88SA123.

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.

Rehearing Denied Oct. 16, 1989.

C. Dale Haney, Aurora, pro se.

Kenneth S. Fellman, Kissinger & Lansing, P.C., Denver, for appellees.

Justice VOLLACK delivered the Opinion of the Court.

C. Dale Haney filed this pro se appeal from the district court's order denying his request for relief in the nature of prohibition under C.R.C.P. 106(a)(4) and awarding attorney fees against him in favor of the town of Empire. We affirm.

## I.

In October 1986, C. Dale Haney (Haney or the defendant) was driving in the town of Empire when he was stopped by an officer and issued a summons and complaint for traveling at 39 miles per hour (mph) in a 25 mph zone, in violation of Empire Municipal Code section 4–1. The summons and complaint required that Haney appear in Empire Municipal Court.[1]

When he failed to appear a warrant was issued for his arrest. Haney was arrested on the warrant, posted a $100 bond, and agreed to appear in Empire Municipal Court on February 18, 1987. When Haney failed to appear on February 18 his bond was ordered forfeited by the court. An Order to Show Cause was issued directing Haney to appear in the Municipal Court on March 26, 1987, to show cause why a judgment should not be entered against him on the bond forfeiture.

On March 26, 1987, Haney filed a complaint under C.R.C.P. 106(a)(4), a Motion to Show Cause, Temporary Restraining Order (TRO), and a Preliminary Injunction. The district court issued a TRO on March 26, 1987, in order to stay the hearing in Empire Municipal Court on the traffic ticket until April 1, 1987. The court also issued an order to show cause requiring the town of Empire (Empire) to show cause why the relief requested by Haney should not be granted. After oral argument at the Order to Show Cause hearing on April 1, 1987, the order to show cause and TRO were discharged and the motion for preliminary injunction denied.

A hearing on the C.R.C.P. 106(a)(4) complaint was held on December 9, 1987. Empire's motion requesting an award of attorney fees was also considered at this hearing. One month later the district court issued a written order *nunc pro tunc* to December 9, 1987. In this order the court ruled on Haney's constitutional argument, dismissed the C.R.C.P. 106(a)(4) complaint, and entered an award of attorney fees. Haney appeals this ruling.

## II.

In the district court's final written order it summarized the case this way:

The Plaintiff's argument is essentially that the citizens of this state are allowed free, unrestricted access to utilize the public highways for their personal use without any regulation whatsoever.

---

1. The copy of the summons and complaint included in the record is illegible so it cannot be ascertained what appearance date was written on the ticket.

Haney's argument was that "Title 42 C.R.S. applies only to commercial activities" and not to him, because he was driving for personal use and not for business.[2] The district court found that the town of Empire had adopted the Model Traffic Code for Colorado Municipalities. The court found that the definition of "motor vehicle" in section 42–1–102(46), incorporated into the Model Traffic Code, "encompasses the personal use of motor vehicles" and not just vehicles "for hire," as asserted by Haney. The court held that local governments have authority to regulate the speed on public highways in their jurisdiction, and that to do so is not an unreasonable exercise of a municipality's police power. Based on this, the court ordered Haney to appear before the Empire Municipal Court on the original summons and complaint issued for speeding in the town of Empire.

The district court also awarded attorney fees against Haney. It held: "Plaintiff has not presented even one scintilla of evidence or valid legal argument in support of his position; rather the Court has received little more than rhetorical and often incomprehensible arguments from Plaintiff." The court thus denied Haney's request for C.R.C.P. 106(a)(4) relief and the complaint was dismissed with prejudice.

Haney appeals this ruling and we review the district court's rulings that: (1) the municipality of Empire has the authority to regulate speed of motor vehicles in its jurisdiction; (2) the definition of motor vehicle is not unconstitutional; and (3) the proceedings instituted by Haney are substantially frivolous and groundless, thereby justifying the award of attorney fees.

### A.

■ We first decide whether the district court correctly held that the town of Empire, as a municipality, has the right to regulate the speed of motor vehicles on public highways.

Empire is a municipality that is classified as a town by statute, sections 31–1–201 and 31–1–203, 12B C.R.S. (1986). As a municipality under the statute, Empire has the power "to make and publish ordinances not inconsistent with the laws of this state ... to provide for the safety ... of such municipality and the inhabitants thereof." § 31–15–103. Individual regulation pertaining to the establishment of speed limits "is the primary function of local government." *Retallick v. Police Court*, 142 Colo. 214, 217, 351 P.2d 884, 885 (1960).

In order to regulate traffic, the town of Empire has adopted the Model Traffic Code for Municipalities (Model Traffic Code). The Model Traffic Code is a model ordinance that embodies provisions of Colorado law applicable to driving in municipalities. Model Traffic Code for Colorado Municipalities, at vii (1977). The General Assembly originally enacted the "Uniform Safety Code of 1935" for the express purpose of alleviating conflicts and lack of uniformity between the state's traffic laws and the numerous municipal traffic codes. § 42–2–102, 17 C.R.S. (1984); *see* § 42–4–101 through –1615, 17 C.R.S. (1984 & 1988 Supp.). The provisions of the Uniform Safety Code apply to "the operation of vehicles and the movement of pedestrians" on the streets and highways and are substantially similar to the Model Traffic Code adopted by Empire. § 42–4–103(2).

The statute discussed above gives Empire the power to make and publish safety ordinances, and the Model or Uniform code was enacted for the express purpose of providing uniformity in municipal traffic codes. Thus, Empire was acting within its authority when it adopted the Model Traffic Code to regulate traffic within the jurisdiction. The district court's ruling in this regard was correct and we affirm.

### B.

■ Second, we must decide whether the district court correctly rejected Haney's

---

**2.** The essence of Haney's legal argument was that "individuals who are traveling in their own vehicles for their own personal use cannot be restricted in any manner" by the State of Colorado or any local governmental entity. This argument is based on defendant's assertion that because the definition of motor vehicle contains the word "transport," the motor vehicle laws only apply to vehicles "for hire" and do not apply to vehicles being driven for personal use.

argument that the definition of motor vehicle as interpreted by the district court is unconstitutional as applied to him.[3]

The Model Traffic Code uses the definition of motor vehicle found in the Colorado Revised Statutes: a motor vehicle is "any self-propelled vehicle which is designed primarily for travel on the public highways and which is generally and commonly used *to transport persons* and property over the public highways." § 42–1–102(46), 17 C.R.S. (1984) (emphasis added). "Vehicle" is defined as "any device which is capable of moving itself, or of being moved, from place to place upon wheels or endless tracks" with certain exclusions not relevant here.[4] § 42–1–102(88), 17 C.R.S. (1984). Haney argues that the definition of "motor vehicle" (which contains the phrase "to transport"), when compared to the definition of "vehicle" (which does not contain the phrase "to transport") requires the conclusion that a motor vehicle can only be a vehicle used to "transport for hire."

The issue before us is whether the district court erred in rejecting Haney's argument "that the highways are open to use by private individuals and their motor vehicles and that municipalities such as the appellee in this case cannot restrict their use" unless the motor vehicles are being driven "for hire."[5]

"Statutory words and phrases should be given their ordinary and accepted meaning unless they have acquired a technical meaning through legislative definition or judicial construction." *Parrish v. Lamm,* 758 P.2d 1356, 1358 (Colo.1988). Because the word "transport" in the Model Traffic Code has not acquired a technical meaning under Colorado law, we will apply the ordinary and accepted meaning. *Id. Webster's Third New International Dictionary* 2430 (1986), defines "transport" as "to transfer or convey from one person or place to another."

There can be no question that the legislature intended to extend to municipalities the power to control drivers who are driving for personal reasons as well as "for hire." The General Assembly adopted the Uniform Safety Code, and the provisions of the uniform traffic code apply to "the operation of vehicles and the movement of pedestrians" on the streets and highways. § 42–4–103(2). Regulation of speed has never been limited in the fashion urged by Haney, nor has this distinction ever been adopted or applied under Colorado statute. In contrast, the motor vehicle provisions have routinely been applied regardless of whether a driver was traveling for pleasure or business.

We further note that there are provisions in the motor vehicle statute that apply specifically to "commercial vehicles." A commercial vehicle is defined as a self-propelled or towed vehicle "used in commerce on the public highways of this state to *transport cargo or is used to transport more than ten passengers,* including the driver." § 42–4–234(1)(a), 17 C.R.S. (1988 Supp.).

■ The party challenging an ordinance bears the burden of establishing that it is unconstitutional. *Parrish v. Lamm,* 758 P.2d at 1364. There is no authority for Haney's position, and to adopt such a construction of the definition of "motor vehicle" would be contrary to established case law. We affirm the district court's ruling.

3. Jurisdiction is before this court because Haney challenged the constitutionality of the Empire Municipal Code under which he was charged with speeding. In a C.R.C.P. 106(a)(4) proceeding we are limited to addressing the constitutionality of an ordinance "as applied." *Two G's, Inc. v. Kalbin,* 666 P.2d 129, 133 (Colo. 1983). Because the district court ruled upon Haney's argument raising the unconstitutionality of the ordinance "regulating *his personal use*" of public highways, this ruling is appropriate for our review.

4. The definition of vehicle has since been amended to expressly include bicycles. § 42–1–102(88), 17 C.R.S. (1988 Supp.).

5. The district court noted that Haney "presented no legal authority to support his extremely unconventional interpretation of the law [which is that] a member of a political association moving his personal clothes, his personal papers, or effects of any nature on the highway in his personal automobile or truck is using a vehicle ... outside of the constitutional authority of the political association to control or regulate."

## C.

We must determine whether the district court correctly ruled that Haney persisted in pursuing a legal action that is substantially frivolous and groundless, thus justifying the award of attorney fees.

The attorney fees statute provides that a court "shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that . . . was interposed for delay or harassment." § 13–17–102(4), 6A C.R.S. (1987). The phrase " 'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." *Id.*

In awarding attorney fees, the trial court must "set forth the reasons for said award." § 13–17–103(1), 6A C.R.S. (1987). A claim or defense is frivolous if the party asserting it "can present no rational argument based on the evidence or law in support of that claim or defense." *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984). This standard does not apply to legitimate but unsuccessful attempts to establish a new theory of law, or to extend, modify, or reverse existing law. *Id.* In contrast, bad faith may include the following: conduct that is "arbitrary, vexatious, abusive, . . . stubbornly litigious [or] . . . aimed at unwarranted delay or disrespectful of truth and accuracy." *Id.* Finally, we note that a trial court's determination in this regard is discretionary and will not be disturbed on appeal if the ruling is supported by the evidence. *Schoonover v. Hedlund Abstract Co., Inc.*, 727 P.2d 408, 409 (Colo.App.1986).

The district court entered this ruling:

The Court in reviewing the various pleadings and motions, briefs filed in this case, finds that the petition, motions, the briefs, and this proceeding brought by the petitioner lacks substantial justifica-

tion and was substantially frivolous, substantially groundless, and solely initiated for the purpose of avoiding and evading legitimate legal process. Therefore, the Court will order that costs and attorney's fees be awarded to the respondent to be payable by the petitioner upon affidavit as to the amount of time. Attorney's fees and costs will enter on a specific order on behalf of the respondent.

We must conclude, based on principles previously stated, that there was evidence in the record to support the trial court's determination that this action was "substantially frivolous, substantially groundless, and solely initiated for the purpose of avoiding and evading legitimate legal process."

We affirm the district court's order.

ROVIRA, J., specially concurs.
ERICKSON, J., joins in the special concurrence.

ROVIRA, Justice, specially concurring:

I concur in the majority opinion. I would also impose sanctions on the appellant pursuant to C.A.R. 38(d), which states: "If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." [1]

In their answer brief, the appellees contend that the appeal is frivolous, groundless, and vexatious, and seek an award of additional costs and attorney fees.

My examination of the appellant's briefs on appeal leads me to conclude that the appellees' contentions are well grounded and that appellant's appeal is devoid of merit, lacks substantial justification, and is frivolous and groundless.

In *Mission Denver Co. v. Pierson*, 674 P.2d 363 (Colo.1984), we held that if an appellee requests a reviewing court to impose C.A.R. 38 sanctions in his opposition

---

1. Section 13–17–102(1), 6A C.R.S. (1987), provides:

    Subject to the provisions of this section, in any civil action of any nature commenced *or appealed* in any court of record in this state,

the court may award, except as this article otherwise provides, as part of its judgment and in addition to any costs otherwise assessed, reasonable attorney fees. (Emphasis added.)

brief, the appellant will have notice and an opportunity to respond, thereby providing him with due process. In his reply brief, appellant did not respond to appellees' request for attorney fees and costs relating to the appeal, but merely reargued the propriety of the trial court's order awarding attorney fees.

Section 13–17–102(6), 6A C.R.S. (1987), provides in pertinent part:

> No party who is appearing without an attorney shall be assessed attorney fees unless the court finds that the party clearly knew or reasonably should have known that his action or defense, or any part thereof, was substantially frivolous, substantially groundless, or substantially vexatious....

Here, the trial court made such a finding and the majority opinion affirms the trial court's order.

In my opinion, the appellant knew or should have known that his appeal was equally frivolous, groundless, and vexatious. As a result of this unjustified appeal, the appellees have suffered damages. An appropriate measure of that damage is the amount of expenditures for legal fees and expenses which they have incurred in defending their position subsequent to the trial court's order. *See In re Marriage of Trask*, 40 Colo.App. 556, 580 P.2d 825 (1978).

Accordingly, I would remand to the district court for a determination of the amount of damages. The trial court should then enter judgment in favor of the appellees for such amount.

I am authorized to say that Justice ERICKSON joins me in this special concurrence.